IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| EDDIE MILTON GAREY, JR., | * | CASE NO. 5:03-CR-83 |
| Defendant | * | |

ORDER [REDACTED]

The Court presently has pending before it Defendant's Motion for Specific Discovery. Defendant seeks information regarding the nature and details pertaining to the use of surveillance equipment and technology employed by the Government during the investigation leading to his indictment. The Government has refused to provide this information, arguing that it is protected by a privilege not to disclose sensitive investigative techniques and a national security privilege.[1] For the reasons set forth below, the Court denies Defendant's motion.

---

[1] The electronic surveillance referred to in this Order is the surveillance conducted to identify the *geographic* location of the cellular telephone that was allegedly used to make the telephone calls that form part of the basis for the indictment. It is important to distinguish between surveillance and tracing used to determine the *geographic location* of a cellular telephone and the surveillance and tracing used to *identify a particular* cellular telephone as the instrument from which a call originated. The Government does not assert any privilege regarding the tracing of the telephone calls to a particular cellular phone. Therefore, the Defendant has the opportunity to obtain discovery as to how that tracing occurred and to thoroughly cross-examine witnesses and present testimony at trial to attack the accuracy of that tracing.

BACKGROUND[2]

The Defendant, Eddie Milton Garey, Jr., is charged with, *inter alia*, interference with commerce by threats and threatening to use weapons of mass destruction. The charges arise from a series of threatening and harassing cellular telephone calls to the Bibb County Emergency 911 Center during September 2003. Most of the 911 calls threatened the use of bombs and explosives against public facilities in the Macon-Bibb County Area. The Government learned that the telephone calls originated from a number of different cellular phones, and it traced the calls to Defendant's house. Part of the Government's proof in this case is the electronic surveillance that allowed the Government to trace certain cellular telephone calls to the Defendant's house. In his Motion for Specific Discovery, Defendant requested information regarding the nature and details pertaining to the use of the pen register and trap and trace devices employed during the investigation leading to the indictment, including the technical analysis referred to in the affidavits proffered in support of the search warrants, as well as orders of the court regarding installation of the devices. Def.'s Mot. for Specific Disc., at ¶ 5(d). Defendant argues that he needs to obtain the technical analysis and the information underlying the technical analysis because it is the "only evidence adduced thus far that

---

[2]The Court finds it necessary to discuss in this Order sensitive and privileged information. To avoid the unnecessary disclosure of that information, the Court has redacted that information from the Court's order that will be filed publicly and served upon the parties. The redacted portions of the order will be so indicated on the publicly filed order. The complete unredacted order will be filed under seal for review only by the Eleventh Circuit Court of Appeals on appeal.

connects the location of the place to be searched with the alleged criminal activity." Def.'s Reply in Supp. of Mot. for Specific Disc., at 4. The officer's affidavit regarding the technical analysis, Defendant argues, did not describe how the technicians determined that the particular telephone calls were placed from Defendant's residence. *Id.*

The Government has refused to provide the technical analysis or other information regarding the surveillance equipment and techniques, citing the privilege not to disclose sensitive investigative techniques recognized by the Eleventh Circuit in *U.S. v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir. 1986). Gov't's Resp. to Def.'s Mot. for Specific Disc., at 2. The Government further argues that the information sought by Defendant is privileged because revealing it would threaten national security.

In support of its objection to disclosure of the surveillance information, the Government tendered Agent [Redacted], a Special Agent with the Federal Bureau of Investigation. Agent [Redacted], who is headquartered in Quantico, Virginia, is a supervisor in the surveillance area and familiar with the FBI's surveillance program. On November 9, 2004, the Court conducted an in camera examination of Agent [Redacted] to explore the basis for the Government's assertion of privilege in this case. The transcript of that examination, along with the Court's complete unredacted order, is filed under seal and shall remain under seal until further order of the Court.

[Redacted]

DISCUSSION

1. *Sensitive Investigative Techniques Privilege*

The Eleventh Circuit in *Van Horn* held that the governmental privilege not to disclose sensitive investigative techniques applies to the nature and location of electronic surveillance equipment. *Van Horn*, 789 F.2d at 1508. The court reasoned that disclosing the precise specifications of surveillance equipment "will educate criminals regarding how to protect themselves against police surveillance." *Id.* The privilege is not, however, absolute: it "will give way if the defendant can show need for the information." *Id.* A defendant meets this burden by showing that the information sought "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) (defining parameters of informer's privilege, upon which the surveillance privilege is based).

The Eleventh Circuit declared that "the necessity determination requires a case by case balancing process." *Van Horn*, 789 F.2d at 1508. In general, the Eleventh Circuit and other courts applying the investigative techniques privilege have held that where the defendant has access to evidence-such as the product of the surveillance-from which a jury can determine the accuracy and validity of the surveillance equipment and techniques, the defendant has no need for the information that outweighs the government's interest in keeping it secret. *See, e.g., Van Horn*, 789 F.2d at 1508; *United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982). In contrast, where the defendant has no opportunity to conduct an examination regarding the

validity and accuracy of the surveillance, courts have held that the defendant does have a need that outweighs the government's privilege. *See, e.g., United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993); cf. *Roviaro v. United States*, 353 U.S. at 60-61.

The Eleventh Circuit found that the defendants in *Van Horn* did not demonstrate a need for the details of the surveillance information that outweighed the government's interest in keeping it secret. In *Van Horn*, the defendants were tried on charges stemming from a marijuana importation and distribution ring. The defendants sought information regarding the location of microphones used to tape conversations that were later used against them. Defendants argued that the information was necessary to demonstrate that the voices on the tapes could have been distorted by the way the microphones were hidden, and that the distortion could have led to improper voice identification. *Van Horn*, 789 F.2d at 1508. The court did not require the government to disclose how and where the microphones were hidden because the defendants had an alternative way to challenge the voice identification: the tapes themselves. The court submitted the ultimate question of whether the voice identifications were correct to the jury, and defendants were allowed to raise the issue of possible misidentification in front of the jury. *Id.* See also *Harley*, 682 F.2d at 1020 (holding that defendant did not need to know exact location of apartment from which surveillance was conducted because he had access to surveillance videotape of the alleged transaction, which "indisputably show[ed] the view the officers in the

surveillance post had, the distance, the angle, and the existence or nonexistence of obstructions in the line of sight").

In contrast, the D.C. Circuit in *Foster* found that defendant *did* demonstrate a need for the details of the surveillance information that outweighed the government's interest in keeping it secret. *Foster*, 986 F.2d at 543. In *Foster*, the defendant was charged with possessing crack cocaine with intent to distribute. He sought disclosure of the observation spot from which the police officer—the government's key witness—observed the drug transaction so that he could challenge the officer's perceptions and ability to identify the defendant accurately. Unlike *Van Horn* and *Harley*, the surveillance in *Foster* was not taped; the police officer's description of the transaction was the key evidence implicating the defendant in the drug transaction. *Id.* There was no tape or photograph a jury could examine to determine whether the surveillance post provided a clear view from which the officer could make an accurate identification of the defendant. Therefore, the D.C. Circuit found that the district court had "erred in upholding an observation post privilege in derogation of [defendant's] right of cross-examination." *Id.* at 544. *See also Roviaro*, 353 U.S. at 61, 65 (holding, in the informer privilege context, that defendant was entitled to disclosure of informer's identity, where the informer was the sole participant, other than the defendant, in the drug transaction charged, and the informer was thus the only person who could controvert, explain or amplify the government witnesses' reports of the conversation between the defendant and the informer).

*2. National Security Privilege*

The courts have also recognized a national security privilege. The Eleventh Circuit has not addressed the national security privilege asserted by the Government in this case.[3] The Fourth Circuit has addressed the issue, and it recognized a qualified national security privilege in *United States v. Moussaoui*, 382 F.3d 453, 466, 475-76 (4th Cir. 2004).[4] This privilege protects information that, if disclosed, would tend to compromise national security. Like the investigative techniques privilege, however, the national security privilege is not absolute: the government's interest in protecting national security does not categorically override a defendant's right to a fair trial. *Moussaoui*, 382 F.3d at 466 ("There is no question that the Government cannot invoke national security concerns as a means of depriving Moussaoui of a fair trial."). The Fourth Circuit, relying in part on *Roviaro*, applied a balancing test to determine whether the information sought by the defendant must be disclosed:

---

[3] In *United States v. Fernandez*, 797 F.2d 943, 952 (11th Cir. 1986), the government asserted a national security privilege to prevent disclosure of certain surveillance techniques, but the court did not reach the issue of whether the information was protected under the privilege because it found that the information was not relevant to defendants' defense.

[4] The Fourth Circuit had previously recognized a qualified national security privilege in the context of classified information protected by the Classified Information Procedures Act (CIPA). The court equated disclosure of classified information regarding national security issues with the type of information sought about informers in *Roviaro* and its progeny. *United States v. Smith*, 780 F.2d 1102, 1107, 1110 (4th Cir. 1985). This Court is not concerned with the balancing approach employed by the Fourth Circuit in the CIPA context, but the Court finds that the analogy drawn in *Smith* between national security information and confidential informer information is helpful in determining the contours of the national security privilege.

7

where the information the government seeks to withhold is "material to the defense," the privilege gives way. *Id.* at 475-76.

At issue in *Moussaoui* was a series of rulings granting the defendant, who was charged with conspiracy related to the September 11, 2001 terrorist attacks on the United States, access to depose "enemy combatant witnesses" who had knowledge of the 9/11 plot and whose testimony would support defendant's claim that he was not involved in the plot. These "enemy combatant witnesses" were members of al Qaeda who had been captured by the government, and the government asserted that these witnesses were national security assets. In determining whether to uphold the rulings granting access to the witnesses, the Fourth Circuit balanced the government's national security interests against the defendant's need for access to the enemy combatant witnesses. The court found that the burdens that would arise from producing enemy combatant witnesses were substantial but that each witness could provide material testimony in the defendant's favor, so the defendant's interests outweighed the government's interest in denying access to the witnesses. *Id.* at 471, 476.

3. *Balancing the Government's Interest Against the Defendant's Need*

In this case, Defendant requested information regarding the nature and details pertaining to the use of the pen register devices and trap and trace devices employed during the investigation leading to his indictment. The Government has asserted both an investigative techniques privilege and a national security privilege. The Court

does not doubt the legitimacy of the Government's concerns regarding the sensitivity of the requested information and thus finds that the information is protected by both the investigative techniques privilege and the national security privilege.

The inquiry does not end there, however. The Court must also evaluate the Defendant's need for the information to determine whether either privilege must give way. In this case, the Defendant is charged with making a series of threatening cellular telephone calls. Although there are tapes of the 911 telephone calls, there is no way to review the tapes and identify the caller because the caller electronically altered his voice. Defendant maintains that the only basis for connecting Defendant's residence with the cell phone calls is the surveillance that traced the telephone calls to Defendant's house.

The Court would be persuaded by Defendant's argument if the Government had never found the cellular telephone it was tracking in Defendant's house pursuant to a valid search warrant. Since the Government found the cellular phone, it will be able to introduce it into evidence at trial. Unlike *Foster* where the Government's only evidence of its surveillance was the eyewitness testimony of the witness conducting the surveillance, the Government here, like in *Van Horn*, has the product of the surveillance: the cell phone itself. The finding of the cell phone in Defendant's house confirms the accuracy

of the Government's geographic surveillance. The Defendant does not need to know how that location was accurately determined.[5]

The Court emphasizes that the surveillance technology that the Government asserts is privileged relates only to how it determined the geographic location of the phone. The Government does not assert privilege as to the technology that purportedly shows that the phone found in Defendant's house is the instrument that actually made the calls. Defendant therefore has the opportunity to discover how that technology works and to contest its reliability at trial.

CONCLUSION

Based on the foregoing, the Court finds that Defendant has access to the product of the surveillance (the cellular telephone found in his house). The location of the phone in his house appears to be undisputed and confirms the accuracy of the geographic surveillance technology. Moreover, Defendant has the opportunity to discover and attack the technology that identified the telephone that was found in Defendant's house as the instrument that made some of the calls that form the basis of the indictment. The Government asserts no privilege as to that technology. Therefore, the Defendant has no need to

---

[5]*Foster* and similar cases are distinguishable in that in those cases the product of the surveillance was visual observation that could only be relayed to the jury through the eyewitness testimony of the officer doing the surveillance. Therefore, to ensure defendant a fair trial in those cases, he should be permitted to discover how the surveillance was conducted and to cross-examine the person doing the surveillance as to what he actually witnessed. The case at bar would be analogous to *Foster* if the Government had traced the phone to Defendant's house but never found the actual phone. Under those circumstances, if the Government sought to introduce evidence that its surveillance located the phone in Defendant's house, notwithstanding its inability to find the phone, then the Defendant should be entitled to discover how the surveillance identified his house as the location of the phone.

discover how the technology traced the geographic location of the phone to his house that outweighs the Government's legitimate interest in keeping it secret.[6]  Accordingly, Defendant's Motion for Specific Discovery is denied.[7]

---

[6]Defendant also sought discovery of the court orders authorizing the surveillance. The Court understands that those orders have now been unsealed and provided to the Defendant. Therefore, this request by Defendant is moot.

[7]As a final footnote, the Court finds it appropriate to address Defendant's continued suggestion that the Government's partial reliance upon the privileged surveillance information in obtaining the search warrant that ultimately led to the discovery of the cellular phone in question deprived Defendant of his constitutional rights under the Fourth Amendment. The Court addressed this contention directly in a previous ruling denying Defendant's Motion to Suppress. In that ruling, the Court found that the government agent's affidavits regarding the link between the suspected threatening telephone calls and the Defendant was sufficient to establish probable cause even though they did not contain the details of how the surveillance worked. Ord. Den. Def.'s Mot. to Suppress, at 7-8. As an alternative to the holding that the affidavits provided sufficient information to establish probable cause that the calls were coming from inside Defendant's residence and holding that the agents were justified in relying upon the warrant pursuant to the good faith exception, this Court found that the Government was entitled to invoke the *Van Horn* privilege not to disclose sensitive investigative techniques. *Id.* at 9. The Court also observes that the reasons for requiring disclosure of privileged information at the search warrant stage are less compelling than those for disclosure in preparation for trial. *See McCray v. Illinois*, 386 U.S. 300, 311 (1967) (when the issue is the preliminary one of probable cause, and "guilt or innocence is not at stake," the privileged information (informer's identity; nature and details regarding surveillance equipment) need not be disclosed in applying for a search warrant; whereas, at an actual trial, where the issue is "the fundamental one of innocence or guilt," the privilege may give way if disclosure of the information "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 310 (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)). In this case, the privileged information did not need to be disclosed to support the search warrant nor is disclosure necessary at the trial stage for the reasons stated previously in this Order.

IT IS SO ORDERED, this 15th day of November, 2004.

_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE