IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| vs. | * |
| | *    CASE NO. 5:03-CR-83 (CDL) |
| EDDIE MILTON GAREY, JR., | * |
|     Defendant | * |

### O R D E R

The sentencing hearing for Defendant was held on August 10, 2005. At that hearing, the Court made certain rulings on Defendant's objections to the Presentence Report ("PSR") prepared by the U.S. Probation Office. After consultation of the now advisory United States Sentencing Guidelines and in light of the Court's rulings on Defendant's objections, the Court sentenced Defendant to 360 months in prison. This Order memorializes the Court's oral rulings made at the hearing that may have had an impact on Defendant's sentence and the rationale expressed at the hearing in support of the Court's sentence. This Order does not include the oral rulings made at the hearing on other objections made by Defendant which the Court found had no impact on the advisory guidelines range and which the Court finds warrant no further explanation beyond what was stated at the hearing.

### Defendant's Convictions

Defendant was convicted after a jury trial of twenty-seven counts, arising from telephone threats to blow up Macon City Hall, a Macon shopping mall, and a Macon news organization. During the search of Defendant's home, law enforcement discovered counterfeit materials

and ammunition, and thus Defendant was also convicted on counterfeit charges and possession of ammunition by a convicted felon. Specifically, the counts of conviction were as follows:

| | |
|---|---|
| Counts 1-11: | Obstruction of Commerce, 18 U.S.C § 1951. |
| Counts 12-16: | Threatening to Use a Weapon of Mass Destruction, 18 U.S.C. § 2332a(2). |
| Counts 17-21: | Making a Threat which Affects Interstate Commerce, 18 U.S.C. § 844(e). |
| Counts 22-26: | Making Counterfeit Securities, 18 U.S.C. § 513. |
| Count 27: | Possession of Ammunition by a Convicted Felon, 18 U.S.C. § 922(g)(1). |

## The Presentence Report

The PSR, pursuant to the Guidelines, groups the related counts and calculates the offense levels for each group as follows:

| Count Group Number | Counts | Offense Level |
|---|---|---|
| IA (Macon City Hall) | 1,12,17 | 42 |
| IB (Colonial Mall) | 1,12,17 | 42 |
| II (Norfolk Southern) | 3,13,18 | 42 |
| III (Bank of America) | 4,14,19 | 42 |
| IV (Interstate Highway) | 6,15,20 | 42 |
| V (Macon Telegraph) | 10,16,21 | 44 |
| VI (Monetary Demands) | 2,7,8,11 | 23 |
| VII (WGXA-TV) | 5 | 20 |
| VIII (Bank Businesses) | 9 | 20 |
| IX (Counterfeiting) | 22,23,24,25,26 | 16 |
| X (Ammunition) | 27 | 26 |

Based upon these groupings, the PSR calculated six total grouped units to be used in determining the adjustment to the highest adjusted offense level to reach the combined adjusted offense level. The guidelines advise that with six units the offense level should be increased five levels. Increasing the highest offense level (Group V) of 44 by five levels yields a combined adjusted offense level of 49. Since Defendant received no credit for acceptance of responsibility, the PSR calculated his total offense level to be 49.

The PSR calculated the Defendant's criminal history points to be six which would typically yield a criminal history category III. However, the PSR also found that Defendant's conduct met the Guidelines definition of "federal crime of terrorism," which advises that the criminal history category should be increased to category VI.

With an offense level 49 and criminal history category VI, Defendant's advisory guideline range is life.

### Defendant's Objections

Defendant filed numerous objections to the presentence report. The Court addressed each of those objections in the hearing, and the Court's rulings may be found in the hearing transcript. The Court will not reiterate all of those rulings in this Order. However, the Court does find it advisable to set forth in writing its explanation regarding several of the objections.

1. *Booker Objections*

Defendant makes various objections that the PSR in its calculation of Defendant's advisory guideline range bases its calculations on evidence that has not been admitted by the Defendant

or proved to a jury beyond a reasonable doubt. Therefore, Defendant argues that using this evidence as a factor in his sentencing violates his rights as described in *United States v. Booker*, 125 S. Ct. 738 (2005). Defendant, however, ignores the remedial majority opinion in *Booker* which remedies these constitutional infirmities by holding that the guidelines are now advisory and not mandatory. Since the Court applies the guidelines in an advisory manner, it may base its sentence on factors that were not admitted to by Defendant or proven to a jury beyond a reasonable doubt. Accordingly, Defendant's *Booker* objections are overruled.

2. Obstruction of Justice Adjustment

The PSR increased Defendant's offense level by two levels pursuant to U.S.S.G. § 3C1.1 because Defendant wrote letters with implied threats to the U.S. District Judge originally assigned to this case and to a victim in this case. Defendant objected to this adjustment contending that the letters did not contain any express or implied threats, nor did they otherwise constitute obstruction of justice. The Court sustained this objection. The letter to the Judge included razor blades. However, Defendant indicates in the letter that he is enclosing the razor blades not as a threat to the Judge but as evidence of the dangerousness of his prison conditions. He maintains that such objects can be readily obtained and place prisoners in danger. The Court, while not condoning the enclosure of the razor blades and not commenting on whether their enclosure could subject Defendant to some other type of criminal or disciplinary action, finds that the letter and the enclosures do not constitute

obstruction of justice for purposes of the guideline adjustment. The Court further finds that the letter to the victim informing her that the Government had inadvertently disclosed certain personal identifying information about her to him likewise does not amount to obstruction of justice for purposes of the guideline adjustment. Based upon the sustaining of this objection, Defendant's advisory combined adjusted offense level would be 47.[1]

3.   Terrorism Adjustment

The PSR increases Defendant's offense level by twelve levels and his criminal history category from III to VI, pursuant to U.S.S.G. § 3A1.4, based upon the probation officer's conclusion that Defendant was convicted of a felony that "involved or was intended to promote a 'federal crime of terrorism.'" The twelve level adjustment was applied to Count Group numbers I-V, all of which included the count of conviction for threatening to use a weapon of mass destruction, 18 U.S.C. § 2332a(2). Defendant objected to the twelve level adjustment and the increase in his criminal history category, contending that a "federal crime of terrorism" for purposes of this guideline adjustment must include conduct that transcends national boundaries. Since Defendant's conduct was purely domestic in nature, he argues that the adjustment should not be applied.

This issue appears to be one of first impression in this Circuit. The Eleventh Circuit has recently held that an "upward departure" based upon this guideline is appropriate even for conduct that does

---

[1] This objection alone does not affect Defendant's advisory guideline range. The advisory guideline range for any offense level of 43 or greater is life.

not transcend national boundaries. *United States vs. Jordi*, No. 04-14046, 2005WL1798055 (11th Cir. Aug. 1, 2005). However, the Court expressly declined to decide whether the guidelines authorize a twelve level "adjustment" based upon conduct that does not transcend national boundaries. *Id*.

Resolution of this issue depends upon the meaning of "federal crime of terrorism" as used in the Guidelines. The guideline application notes expressly provide that it shall have the meaning set forth in 18 U.S.C. § 2332b(g)(5). That code section defines "Federal crime of terrorism" to include "an offense that--(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of . . . [section] 2332a (relating to use of weapons of mass destruction) . . . ."

Defendant was convicted of a violation of 18 U.S.C. § 2332a (relating to use of weapons of mass destruction), and the evidence presented at trial supports a finding that Defendant intended to influence or affect the conduct of government by intimidation or coercion. Therefore, applying the plain language of the statutory definition, it appears clear that Defendant's conduct authorizes a finding that he was involved in or intended to promote a "federal crime of terrorism."

The Court's concern centers upon the fact that this definition of federal crime of terrorism is included in the code section that is limited to terrorism that transcends national boundaries. 18 U.S.C. § 2332b. Violation of § 2332b, in which this definition appears,

6

requires a finding that the offense conduct "transcends national boundaries"; therefore, Defendant could not be convicted under § 2332b, since his conduct did not "transcend national boundaries." The question therefore arises as to whether the interpretation of this definition should be read in the context of the entire code section and should thus be read to mean that federal crime of terrorism is an offense, *transcending national boundaries*, "that (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of . . . [section] 2332a."

    The guidelines make no reference as to whether the adjustment is limited to terrorism that transcends national boundaries. They simply refer to the specific statutory definition. The Court therefore must interpret the intent of the guidelines, not the intent of Congress in placing the definition in the code section. Since the language is plain and there is no contrary intent expressed in the Guidelines (although one could argue there is a contrary intent in the code section), the Court finds that the guidelines do not require that the offense conduct transcends national boundaries. Although the Eleventh Circuit in *Jordi* did not address the issue presently before the Court, it would be inexplicable to allow for an "upward departure" under this guideline when the conduct does not transcend national boundaries (as held in *Jordi*), and yet not allow for an "adjustment" *because* the conduct does not transcend national boundaries. Consequently, the PSR correctly made the twelve level adjustment, and Defendant's objection is overruled.

Based on the foregoing and the Court's other rulings at the sentencing hearing, the Court concluded that the appropriate offense level for this case is 47 with a criminal history category VI. The advisory guideline range is therefore life. The Court finds no basis for making a downward departure under the guidelines. However, the Court finds that considering the factors set forth in 18 U.S.C. § 3553(a), life is not an appropriate sentence in this case. Consequently, the Court finds that a variance from the advisory guideline range is warranted.

## Variance[2]

Having consulted the advisory guideline range of life, the Court determined that a variance was appropriate. This variance is based on the following factors. The Court is guided by the overarching principle that its sentence should be based upon the "nature and circumstances of the offense and characteristics of the defendant." 18 U.S.C. at § 3553(a)(1). Moreover, the Court should impose a sentence "sufficient, but not greater than necessary, to . . . reflect the seriousness of the offense, to promote respect for the law, to provide just punishment . . . to afford adequate deterrence . . . and to protect the public. . . ." 18 U.S.C. § 3553(a)(2)(A)-(C). The Court is also mindful that its sentence should seek to "avoid unwarranted sentence disparities among defendants with similar records

---

[2] "Variance" means a sentence that is outside the advisory guideline range after the guidelines (including the provisions related to departures) have been applied and consulted by the Court.

who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

In this case, the guidelines increase Defendant's offense level by twelve levels for conduct of which he was not convicted by a jury. In fact, the code section relating to a criminal violation for international terrorism, 18 U.S.C. § 2332b, wherein the definition of "federal crime of terrorism" is found, would not even apply to Defendant because that violation requires conduct that transcends national boundaries. Nevertheless, under the guidelines, Defendant is arguably being held criminally responsible for conduct for which he was not indicted and for which he never could have been convicted. Moreover, the Court observes that a violation for "threatening" to commit an offense of international terrorism under § 2332b has a maximum sentence of ten years. 18 U.S.C. § 2332b(c)(G). Yet, this Defendant, who "threatened" to bomb various public facilities, faces life imprisonment in large part because of a Guidelines enhancement of approximately twenty years when he would have faced no more than ten years for a violation of the international terrorism statute. It is also troubling that another defendant who carried out a threat to bomb public facilities, injuring and maiming (but not killing) thousands of people, would face the same sentence as this Defendant who did not cause physical injury to a single person. Therefore, in considering the "nature and circumstances of the offenses" the Court finds that the twelve level increase does not accomplish the purposes set forth in 18 U.S.C. § 3553.

9

The guideline finding that Defendant was involved in a federal crime of terrorism also increased his criminal history category from a category III (based on six criminal history points arising from two convictions) to the maximum category of VI. The Court finds that this three category increase under the circumstances of this case ignores the individual "history and characteristics" of the Defendant, and instead places too much weight on a questionable interpretation of what constitutes a federal crime of terrorism under the Guidelines. The Court finds that this increase in the Defendant's criminal history category does not accomplish the purposes of § 3553.

Based on the foregoing, the Court finds that a variance from the advisory guideline range of life is warranted in this case. In determining what that variance sentence should be, the Court finds it helpful to refer in part to the guidelines. The Court does see the wisdom in the policy underlying the Sentencing Guidelines provision that increases a defendant's sentence when the defendant's offense is intended to affect the conduct of government by intimidation or coercion. In fact, aside from the terrorism adjustment, an upward departure may have been authorized in this case pursuant to U.S.S.G. § 5K2.7, which authorizes a departure when the defendant's conduct results in a significant disruption of government functions. The Court therefore finds it appropriate to consider the effect of Defendant's conduct on government functions when crafting its sentence in this case. However, the Court finds that a twelve level increase, which represents approximately twenty-five percent of the total offense level, to be excessive. The application of this guidelines

adjustment in this case results in the offense conduct for which the Defendant was indicted and convicted to become subsumed by the twelve level adjustment which is based upon conduct for which the Defendant was neither indicted nor convicted. The Court finds that a more reasonable adjustment would be six levels which is comparable to the greatest adjustment permitted when the victim of an offense is an "official victim." U.S.S.G. § 3A1.2.[3] The Court further finds that Defendant's criminal history category of III adequately reflects his criminal history.

Based on the foregoing, the Court imposed a variance sentence in this case based upon a variance offense level of 41[4] and a criminal history category of III, which yielded a variance sentencing range of 360 months to life. Accordingly, the Court sentenced Defendant to 360 months in prison.

IT IS SO ORDERED this 10th day of August, 2005.

_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[3]The Court is not of the opinion that the "official victim" guideline applies in this case. However, having decided that a variance is appropriate, the Court finds that reference to the Guidelines is helpful in crafting a reasonable sentence. Moreover, the Court observes that a six level adjustment more closely corresponds with the ten year statutory maximum sentence for a defendant who is convicted for threats in violation of the international terrorism statute. Finally, the Court finds that expressing its "variance sentence" in the same terminology as used in the Guidelines, with offense level and criminal history category, provides a reasonable and understandable analytical framework.

[4]This offense level also takes into consideration the sustained objection previously described in this Order.