**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

EDDIE MILTON GAREY, JR.,     *

     Petitioner,     *

                                CASE NO. 5:08-CV-90024 - CDL

vs.     *             28 U.S.C. § 2255

                                CASE NO. 5:03-CR-83 - CDL

UNITED STATES OF AMERICA,     *

     Respondent.     *

## REPORT AND RECOMMENDATION

      An Indictment was returned in this Court on September 24, 2003, charging Eddie Milton Garey, Jr., with threatening to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a(a)(2), and with making a bomb threat in violation of 18 U.S.C. § 844(e).  (R 8).  On March 18, 2004, a Superseding Indictment was returned in this Court charging Eddie Milton Garey, Jr., with eleven (11) counts of interference with commerce by threats of violence in violation of 18 U.S.C. § 1951, five (5) counts of threatening to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a(a)(2), five (5) counts of making a bomb threat in violation of 18 U.S.C. § 844(e), five (5) counts of counterfeit securities in violation of 18 U.S.C. § 513, and one (1) count of possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  (R 68).  Defendant Garey pleaded not guilty to all charges and was tried by jury from December 6, 2004, through December 17, 2004, and was found guilty on all counts contained in the Superseding Indictment.  (R 180, 181).

      The District Court sentenced Defendant Garey on August 10, 2005, to a total term of imprisonment of 360 months, which was made the Judgment of the Court on August 17, 2005.  (R 211, 214).  Garey timely filed a notice of appeal on August 22, 2005.  (R 215).

On appeal, Garey contended that the trial court had violated his Sixth Amendment right to counsel by forcing him to proceed pro se when he had not affirmatively asked to represent himself. In an *en banc* and well reasoned decision, the  United States Court of Appeals for the Eleventh Circuit held that Garey had voluntarily waived his right to counsel by his conduct, and, because he was forewarned of the consequences of his choice and the dangers it posed, his waiver was knowingly made.   *United States v. Garey,* 540 F.3d 1253 (11th Cir. 2008).   The United States Supreme Court ultimately denied petition for writ of certiorari on this issue, after sentencing when Petitioner Garey filed his consolidated appealed with the  United States Court of Appeals for the Eleventh Circuit challenging his sentence as unreasonable. The Circuit Court found that, having committed a federal crime of terrorism within the meaning of the Sentencing Guidelines, Garey's sentence was not unreasonable.  *United States v. Garey,* 546 F.3d 1359 (11th Cir. 2008), *cert. denied,* 129 S. Ct. 1016(2009).   The United States Supreme Court likewise denied rehearing on this issue as well.  *Garey v. United States,* 129 S.Ct. 2432 (2009), *rehearing denied*,  130 S. Ct. 24 (2009).

Petitioner Garey filed a Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (R 286), under consideration here, on January 30, 2009, despite the fact that his petition for writ of certiorari remained pending before the United States Supreme Court until May 26, 2009.  However, the Government, in response to Petitioner's § 2255 Motion, filed on July 2, 2009, elected to raise no jurisdictional issue.  (R 309 at 4).  On July 16, 2009, Petitioner Garey filed a document titled "Memorandum of Law in Support of Movant's § 2255 Motion To Vacate, Set Aside, or Correct Sentence," (R 314), which does not follow the format of his § 2255 Motion, but argues some of the same claims in various and sundry places in the document.

At page six (6) of Petitioner Garey's Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, he sets out his GROUND ONE, as follows:

> The Conviction was obtained in violaton of Garey's 4th Amendment Right to be free from unreasonable searches and seizures or to be free from searches conducted pursuant to warrants issued without probable cause, unsupported by oath or affirmation, and which failed to particularly describe the place to be searched, and the persons or things to be seized under the Constitution of the United States ... .

Petitioner Garey thereafter alleges causes, literally from "a" to "z," as to how his Fourth Amendment right was violated.   (R 286 at 6, 7).  The Government asserts in its Response (R 309 at 10) that, "[T]he Defendant's conviction did not violate the Fourth Amendment to the United States Constitution."   The Government alleges, that having failed to raise any Fourth Amendment claim in either of his direct appeals, Petitioner Garey has procedurally defaulted on this claim.

In *Lynn v. United States,* 365 F.3d 1234, 1235 (11th Cir. 2004), our Court of Appeals held that under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.  *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States,* 153 F.3d 1305, 1307 (11th Cir. 1998).  This rule generally applies to all claims, including constitutional claims.  *See Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994) ("Where the petitioner  – whether a state or federal prisoner – failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation.").  A defendant can avoid a procedural bar only by showing cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error.  *Brousley v. United States,* 523 U.S. 614, 622, 118 S. Ct. 1604, 161 (1998); *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994).

Petitioner's only attempt at showing cause to explaining why he did not raise this Fourth Amendment issue on direct appeal appears on page five (5) of his § 2255 Motion (R 286) at the form petition Ground One (b)(2) where he states:

> Court-Appointed Appellate Counsel refused to raise any of these issues on appeal and ignored movant's repeated requests or demands for him to raise them.

This assertion may explain the cause for the procedural default on this particular issue but it does not address the actual prejudice prong required to avoid a procedural bar per *Brousley,* 523 U.S. at 622, 118 S. Ct. at 161; and *Mills,* 36 F.3d at 1055, *supra*.  Thus, Petitioner's Ground One claim becomes a Sixth Amendment issue of effective assistance of counsel.

If a claim of ineffective assistance of counsel is predicated on counsel's failure to litigate a Fourth Amendment claim, petitioner must establish that the Fourth Amendment claim is meritorious and that a reasonable probability exists that the appellate court's decision would have been different absent the evidence allegedly subject to trial counsel's Motion to Suppress. *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S. Ct. 2574 (1986).

The Court should take notice of the information available to appointed appellate counsel in regard to a consideration of raising a Fourth Amendment claim of error on direct appeal.   Before Petitioner's trial counsel was demoted to stand-by counsel for the reasons chronicled by the Circuit Court in its decision adverse to Petitioner Garey on his first direct appeal, *Garey,* 540 F.3d 1253, Petitioner's trial counsel filed a Motion to Suppress evidence based on Petitioner's claim of illegal search and seizure, the Fourth Amendment claim, regarding the September 11, 2003, execution of the Search Warrant in question. (R 24).  The Government filed its Response to the Motion to Suppress on November 11, 2003, (R 27), asserting that there was sufficient probable cause for

4

issuance of the Search Warrant, attaching the underlying affidavit presented to the court. (R 26, Exhibit A).

The affidavit stated that:

> From September 1, 2003, through September 11, 2003, an extensive series of threatening calls were made into the Bibb County Emergency 911 Center, as well as local businesses; that Court Orders were obtained directing Cingular Wireless and Nextel Communications to install pen register devices and trap and trace devices on specified telephone numbers, including (478) 731-6672; that Cingular Wireless and Nextel were directed to provide real-time cell site information, with which to provide the latitude, longitude and the geographical analysis for a cellular call in progress, utilizing a specific cell tower; that a phone call was made to the 911 Center at 10:52 a.m., on September 11, 2003, with the caller using an altered voice or a computer generated voice; that the trap and trace devices in place identified the call as coming from a telephone number (478) 731-6672 at 10:52 a.m.; that technicians employed by the federal government has determined that the telephone call came from a residence at 2832 Barrett Avenue, Macon, Bibb County, GA.

The successful tracing of the location of the call to 911 equated probable cause to issue the Search Warrant for that residence, as there had been several threatening calls between September 1 and 11, 2003, referencing the use of bombs, cyanide poison, explosives, weapons, all by the use of mobile telephonic communication, and the Search Warrant issued for any such related items. The Warrant stated the items to be seized as "bombs or explosives, any weapons, poisons, bomb making material or components, bomb making literature, documents, notes journals, phone records, receipts for purchase of related materials, ... military ordinance, ... mobile communication devices, including cellular telephones, frequency scanners, PCS telephones ... any recording devices or microphones, ... voice altering equipment or software, computer modems, and mobile communication devices ..." *Id.*

The District Court ruled on Petitioner Garey's Motion to Suppress evidence seized in

violation of the Fourth Amendment prohibition against unlawful search and seizure, that:

> In the case at bar, a careful review of both search warrants and the agent's affidavits reveals there was more than sufficient information to establish probable cause that the calls were coming from inside the residence at 2832 Barrett Avenue, Macon, Georgia. The pen registers and the trap and trace devices enabled the agents to identify with exact specificity the precise geographic location and structure from which the calls were coming ... [and there was established]  a connection between Defendant Garey and the residence to be searched and a link between the residence and the suspected threatening calls.

The District Court issued its Order denying the Motion to Suppress on March 23, 2004.  (R 71).  A judge's decision that probable cause exists to issue a search warrant is considered conclusive absent a showing that the decision was arbitrary.  *United States v. Long,* 674 F.2d 848, 852 (11th Cir. 1982).  These were the facts and law facing appellate counsel in his consideration of raising a Fourth Amendment claim of error in regard to the Search Warrant.  It cannot be said that no competent attorney would have done as Petitioner's appellate attorney did, i.e., determined to spend his efforts of more promising issues and not raise the Fourth Amendment claim.

To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000).  In order to show that counsel's performance was unreasonable, a petitioner must show that no competent counsel would have taken the action in question. *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318 (11th Cir. 2002).  To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have been different. *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995);  *Meeks v. Moore*, 216 F.3d 951 (11th Cir. 2000).  If a defendant fails

to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holiday v. Haley*, 209 F.3d 1243 (11th Cir. 2000).

The *Strickland* standard applies to ineffective assistance of appellate counsel claims. *Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991), *cert denied*, 502 U.S.1077, 112 S. Ct. 981 (1992). To prevail on such claims, a Petitioner must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. *Id.*

Counsel does not provide ineffective assistance of counsel when frivolous arguments are not raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308 (1983); *United States v. Winfield,* 960 F.2d 970, 974 (11th Cir. 1992). The Sixth Amendment does not even require appellate advocates to raise every non-frivolous issue. *Heath,* 941 F.2d at 1131. Instead, effective advocates "winnow out" weaker arguments even though the weaker arguments may be meritorious. *Id.* Thus, even though an issue not appealed might have been successful, the appellate advocacy has to be judged in its entirety. *Id.* To determine whether defense counsel rendered ineffective assistance by failing to raise certain issues on appeal, the court must examine the merits of the issues Petitioner alleges his counsel was derelict in not raising on appeal. *Miller v. Dugger,* 858 F.2d 1536, 1538 (11th Cir. 1988). Appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir. 1984), *cert. denied*, 469 U.S. 956, 105 S. Ct. 355 (1984).

After examination of the evidence that was before appellate counsel regarding the basis for the court's finding that there was probable cause to issue the search warrant in question and the consequent invalidity of Petitioner's Motion to Suppress, it readily appears that appellate counsel's decision not to raise a Fourth Amendment issue does not demonstrate ineffective assistance of

7

counsel.  Moreover, Petitioner Garey cannot carry his burden of showing that  he was prejudiced by appellate counsel's decision not to raise the Fourth Amendment issue on direct appeal, as it relates to the issue of procedural default or ineffective assistance of counsel.   Petitioner cannot show that, but for counsel's decision not to raise the Fourth Amendment issue, and therefore, permit the procedural bar, the outcome of his case would have been different.   Petitioner's **Ground One** is, therefore, without merit and should be DENIED.

Petitioner Garey's **Ground Two**, as stated in his § 2255 Motion at page 9, overlaps his Ground One procedurally defaulted attack on the denial of his Motion to Suppress the evidence derived from what he alleged to be an illegal search warrant, but frames this claim of illegal search warrant and inadmissable fruits thereof as an alleged Fifth and Fourteenth Amendment rights violation, stated as follows:

> The conviction was obtained in violation of Garey's 5th and 14th Amendment Rights not to "be deprived of Life, Liberty, or Property without due process of law." or equal protection under the Constitution of United States when:
>
>> a. the search warrant was issued to an FBI agent but executed by the Macon Police SWAT team without any federal officer present and acting in its execution as required by 18 U.S.C. § 3105 ...

followed by another literal "a" to "z" litany of conclusory and undocumented claims related to his due process violation claim, including claims relating to Petitioner's arrest and detention which are not cognizable issues in § 2255.  *See* 28 U.S.C. § 2255(a).  This Ground Two claim in total will be shown to have been procedurally defaulted, and to address each of Petitioner's attendant "a" to "z" claims would be a nullification of the procedural default rule and all of the Congressional, Circuit and Supreme Court authority which has established it.

As noted above in regard to Petitioner's Ground One, the district court appointed appellate

counsel for Petitioner who raised on direct appeal issues in regard to trial counsel alleged conflicts of interest and sentencing issues, but no Fourth, Fifth, or Fourteenth Amendment issues.  Moreover, while defendant again makes the sweeping allegation of ineffective assistance of appellate counsel at Ground Two (b)(2) of his § 2255 Motion, that "Court-appointed Appellate Counsel refused to raise any of these issues on appeal and ignored Movant's repeated requests or demands for him to raise them," he does not attempt any showing of prejudice in the absence of these due process claims to his appeal or that his appeal would have come out differently had counsel raised these claims.

While Petitioner's cursory claim of ineffective assistance of counsel may indicate cause for the procedural default of his Ground Two due process claims, he does not attempt any showing of actual prejudice.  In *Lynn v. United States,* 365 F.3d 1234, 1235 (11th Cir. 2004), our Court of Appeals held that under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.  *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States,* 153 F.3d 1305, 1307 (11th Cir. 1998).  This rule generally applies to all claims, including constitutional claims.  *See Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994) ("Where the petitioner  – whether a state or federal prisoner – failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation.").  A defendant can avoid a procedural bar only by showing cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error.  *Brousley v. United States,* 523 U.S. 614, 622, 118 S. Ct. 1604, 161 (1998); *United States v. Frady,* 456 U.S. 152, 166, 102 S. Ct.  1584 (1982); *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994).

Again, the *Strickland* standard applies to ineffective assistance of appellate counsel claims.

*Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991), *cert denied,* 502 U.S.1077, 112 S. Ct. 981

(1992).  To prevail on such claims, a Petitioner must show that his appellate counsel's performance

was deficient and that this performance prejudiced his appeal in that a different decision would have

resulted had counsel raised the due process issue.  *Id.*  Petitioner Garey has failed to carry his burden

as to Ground Two and the same should be DENIED as procedurally barred.

In his **Ground Three,** Petitioner Garey alleges that:

> The Conviction was obtained in violation of Garey's 6th Amendment
> Rights to a speedy, public trial in the State of indictment, to be
> informed of the charges; to confront witnesses against him and to
> have the Assistance of Counsel for his defense under the Constitution
> of the United States.

On his petition form, at Ground Three (b)(1) & (2) of his Motion, Petitioner Garey again

acknowledges that his Ground Three claims were not raised on direct appeal because "Court-

appointed appellate counsel refused to raise any of these issues on appeal and ignored Movant's

repeated requests or demands for him to raise them."   Here again, Petitioner's assertion of his

counsel's refusal to raise these issues explains why they were not raised on direct appeal, but does

not show actual prejudice in their not having been raised as required to avoid a procedural default

bar.

"Where the petitioner – whether a state or federal prisoner – failed properly to raise his claim

on direct review, the writ is available only if the petitioner establishes cause for the waiver and

shows actual prejudice resulting from the alleged violation."  *Reed v. Farley*, 512 U.S. 339, 354, 114

S. Ct. 2291, 2300 (1994).  A defendant can avoid a procedural bar only by showing cause for not

raising the claim of error on direct appeal *and* actual prejudice from the alleged error.  *Brousley v.*

*United States,* 523 U.S. 614, 622, 118 S. Ct. 1604, 1610 (1998); *United States v. Frady,* 456 U.S.

152, 166, 102 S. Ct.  1584 (1982); *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994).

Again, the *Strickland* standard applies to ineffective assistance of appellate counsel claims. *Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied,* 502 U.S. 1077, 112 S. Ct. 981 (1992), and requires that Petitioner show that the outcome of his case would have been different had counsel's conduct been as Petitioner contends it should have been.  To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have been different. *Mills v. Singletary,* 63 F.3d 999 (11th Cir. 1995); *Meeks v. Moore*, 216 F.3d 951 (11th Cir. 2000).  If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holiday v. Haley,* 209 F.3d 1243 (11th Cir. 2000).  While Petitioner Garey makes numerous claims of alleged error or misconduct, he does not assert that his case would have had a different result but for the procedural default or had counsel raised the issues asserted in Petitioner's Ground Three.  Therefore, in order not to nullify the procedural default rule and all of the authority which established it, Petitioner's Ground Three should be DENIED as procedurally barred.  Nevertheless, because Petitioner's "a" to "z" litany of claims attendant to his Ground Three includes a claim of structural error, the same will be addressed here.

Restating Petitioner Garey's **Ground Three** with claims **a, d,** and **i:**

> The Conviction was obtained in violation of Garey's 6th Amendment Rights to a speedy, public trial in the State of indictment, to be informed of the charges; to confront witnesses against him and to have the Assistance of Counsel for his defense under the Constitution of the United States:
>
> **a.** the Government exceeded the 10-day transportation limit mandated by 18 U.S.C. § 3161(h)(1)(H);
>
> **d.** Government transferred Garey from the district wherein the crime shall have been committed of the purposes of precompetency psychiatric or psychological examinations when they offered no evidence showing that it was impracticable to conduct the

11

examination in the district wherein he was arrested or indicted; [and]

**i.** Government denied Garey of his ability to consult with appointed pretrial counsel.

Petitioner's claim is apparently based on § 3161(h)(1)(F) [not (H)], which provides:

> The following periods of delay shall be excluded in computing the time within which an information or indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
>> (1)(F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable.

Without determining whether the Government actually violated the 10-day exception from excludable time for speedy trial as provided in § 3161(h)(1)(F), the sanctions for violations of § 3161 are provided by 18 U.S.C. § 3162.  Section 3162(a)(2) provides that:

> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed ***on motion of the defendant.*** ... Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section. (emphasis added).

Petitioner Garey does not plead that he filed any motion to dismiss his indictment for a speedy trial violation, nor does the record show that any such motion was ever filed.  The record shows Petitioner Garey was arrested on September 11, 2003 on Complaint (R 1) charging him with making phone calls threatening the use of weapons of mass destruction and bombings. After a detention hearing and an Order of Detention, Indictment was returned against Garey on September 24, 2003 (R 8).  On October 16, 2003, the Government filed an unopposed Motion for

Psychiatric/Psychological Evaluation of Defendant (R 15), and the Motion was granted by the Court.

Petitioner's Ground Three (a) claim is without merit.  Likewise, Petitioner's Ground Three (d) claim

is without merit.  Allegations of improper removal from one district to another are not grounds for

§ 2255 relief.  *Ragavage v. United States,* 272 F. 2d 196, 197 (5th Cir. 1959).[1]  Moreover, 18 U.S.C.

§ 3161(h) provides:

> The following periods of delay shall be excluded in computing the
> time within which an information or an indictment must be filed, or
> in computing the time within which the trial of any such offense must
> commence:
> **(1)** Any period of delay resulting from other proceedings concerning
> the defendant, including but not limited to —
>> **(A)** delay resulting from any proceeding, including
>> any examinations, to determine the mental
>> competency or physical capacity of the defendant.

In consideration of the charges and facts of this case, it cannot reasonably be argued that the

Government's Motion for Psychiatric/Psychological Evaluation of Defendant was frivolous or made

in bad faith, nor that the Court's Order granting that Motion was error.

Petitioner Garey's claims **Three b** and **c** allege that:

> Government failed to indict Garey within 30 days of his arrest on
> every 18 U.S.C. § § 844(e), 1951 and 2332a(a)(2) count alleged in
> agent Thompson's 9/11/2003 criminal complaint affidavit;

> Government recharged Garey in a superseding indictment with 11
> counts of alleged commerce obstruction; 5 counts of threatening to
> use certain weapons of mass destruction; and 5 counts of threatening
> to use certain weapons of mass destruction; and 5 counts of making
> false threats under 18 U.S.C. § 844(e), 1951 & 2332(a)(2), charges
> previously raised in agent Thompson's 9/11/2003 criminal complaint
> affidavit, but omitted all except 2 of those counts from the original
> indictment contrary to the 30-day mandate prescribed in 18 U.S.C. §
> 3161(b).

---

[1]The Eleventh Circuit, sitting en banc in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Petitioner Garey is correct that the Government did not indict him in the original indictment (R 8) with all of the offenses alleged in FBI Agent Thompson's criminal complaint affidavit, but brought a superseding indictment (R 68) on March 18, 2004, charging more fully outside the 30 day specification for an indictment provided in 18 U.S.C. § 3161(b).   That statute however does not prohibit superseding indictments.  Nor does any other rule or law.  To the contrary, the United States Court of Appeals for the Eleventh Circuit held in *United States v. Mosquera,* 95 F.3d 1012, 1013 (11th Cir. 1996), that:

> A superseding indictment that issues more than 30 days after the arrest, but before the original is dismissed does not violate § 3161(b). *United States v. Orbino,* 981 F.2d 1035, 1037 (9th Cir. 1992), *cert. denied,* 510 U.S. 893, 114 S. Ct. 256 (1993).
>
> The Speedy Trial Act does not guarantee that an arrested individual indicted within thirty days of his arrest must, in that thirty-day period, be indicted for every crime known to the government, failing which he may never be charged. In short, the Speedy Trial Act is not a statute of limitations.
>
> [The applicable statute of limitations] specifies the time within which an arrested indicted defendant may be charged with additional crimes by superseding indictment.  (citation omitted).  It is undisputed that the charges brought in the superseding indictment are within the applicable five-year statute of limitations.

Petitioner's case cannot be distinguished from *Mosquera.*   Petitioner Garey has been misinformed regarding the law relating to superseding indictments.  There is no merit in this claim and it should be DENIED as procedurally barred, abandoned, and without merit.

Petitioner's claims **Three e** and **f** contain vague and unsupported claims relating to the presentation of evidence or the lack thereof during Petitioner's trial which do not rise to the level of cognizable claims in § 2255 proceedings.  At those sections Petitioner states:

> **e.**  the court redacted the name of the FBI Agent who used the cell site data to determine that the call which agent Thompson based his

14

probable cause to arrest Garey on had allegedly originated from inside Garey's home which was the sole link between Garey's home and the alleged offenses Garey was indicted on;

**f.**  Government and the Court would not allow Garey during trial to question the unidentified FBI agent who performed the cellular phone tracking that led to the search warrants and his subsequent indictments.

Petitioner's objective here was clearly that he wished to expose through examination of the agent the investigative processes utilized in the detection of his cell site data and how the link to his residence was made.  Probable cause for the search warrant had already been presented via in camera hearing regarding the technology and technique used during the investigation (R 244, 26), and the order of the court finding probable cause to issue the search warrant was not challenged on direct appeal.  Moreover, the Government has a qualified privilege to maintain the confidentiality of the technology and techniques used in investigations as these matters are extremely sensitive and public dissemination would impair future investigations by providing offenders with information to avoid such detection.  *See United States v. Fernandez,* 797 F.3d 943, 952-953 (11th 1986); *United States v. Van Horn,* 789 F.2d 1492 (11th Cir. 1986), *cert. denied,* 479 U.S. 854 (1986) ("We recognize a qualified government privilege not to disclose sensitive investigative techniques.").  In *Roviaro v. United States,* 353 U.S. 53, 77 S. Ct. 623 (1957), the Supreme Court acknowledged the existence of a privilege to withhold the identity of persons who furnish information of violations of law. In *Van Horn,* 789 F.2d at 1508, the court held that the privilege will only give way if the defendant can show a need for the information.    Petitioner Garey was given the pretrial opportunity to show a need for this sensitive information on September 9, 2004, and he was unable to do so as the court found.  (*See* Trial Tr. Vol. V, 193- 96, Dec. 14, 2004).  The denial of Petitioner's demand for the identity of the FBI agent who utilized the technology and investigative techniques in determining the cell site data in this case is not cognizable in § 2255 and is otherwise without merit.

Petitioner Garey's **Ground Three g, j,** and **k** claims involve alleged arrest and detention irregularities for which there is no provision under § 2255. These claims are, therefore not cognizable here. 18 U.S.C. § 2255 provides:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Petitioner Garey's claims **Three l, m, n, o, p, q, s, t, x, y,** and **z**, amount to a diatribe against his pretrial and appellate counsel, which raise cognizable issues only by implication of claims of ineffective assistance of counsel. Petitioner states:

> **l.** appointed appellate counsel Mason deliberately refused to raise Garey's viable 4th and 5th Amendment claims in the briefs on direct appeal;
>
> **m.** appellate counsel moved the Court of Appeals for an extension of time to consult with Garey for the purpose of discussing the issues to be raised in the briefs but made no effort to contact Garey via phone or in person to discuss any issues prior to filing the initial brief;
>
> **n.** either trial or appellate counsel failed to raise one or more of the 4th Amendment claims presented in "**Ground One**" of this Motion prior to trial or on direct appeal;
>
> **o.** either trial or appellate counsel failed to raise one or more of the 5th Amendment claims presented in "**Ground Two**" of this Motion prior to trial or on direct appeal;
>
> **p.** court appointed pretrial and appellate attorneys who operated under actual conflicts of interests;
>
> **q.** court-appointed Garey, as an indigent accused in a criminal prosecution, attorneys that he could not call collect;
>
> **s.** [**r.** omitted]  court-appointed counsel Mason hung up on Garey

16

during the January 9, 2006, prepaid call;

**t.**   court-appointed counsel Mason falsely stated that Garey had "began screaming and cursing," him during the January 9, 2006, call in his January 26, 2006, letter to the 11th Circuit seeking to mislead the court into believing that Garey had acted inappropriately during his monitored and recorded prepaid call seeking to know why Mr. Mason failed to raise any of his 4th Amendment claims;

**w.**   the court security officer locked the courtroom doors without authorization from the court during jury selection on the first day of trial and refused entry to a newspaper reporter by informing the reporter that it was the court's policy not to permit the public during jury selection to come in the courtroom;

**x.**   appointed pretrial counsel failed to investigate or research 11th Circuit authority showing that more than one cell phone can have and operate with the same ESN/MIN combination;

**y.**   appointed appellate counsel failed to allow Garey a reasonable opportunity to read expressly requested parts of the trial testimony of Macon SWAT team Sgt. Cotton, FBI agents Thompson and Rolince, Macon Police Detective A.C. Grinstead, prior to filing his initial brief;

**z.**   appellate counsel refused to consult with Garey prior to filing the en banc brief.

Understandably, appellate attorney Mason "deliberately refused to raise Garey's viable 4th and 5th Amendment claims in the briefs on direct appeal."   As discussed fully in response to Petitioner's Ground One at page 7 above,  appellate counsel was not ineffective for winnowing out less promising claims for the more promising ones.  The *Strickland* standard applies to ineffective assistance of appellate counsel claims.  *Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077, 112 S. Ct. 981 (1992).   To prevail on such claims, a Petitioner must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. *Id.*

Counsel does not provide ineffective assistance of counsel when frivolous arguments are not

raised on appeal. *Jones v. Barnes,* 463 U.S. 745, 103 S. Ct. 3308 (1983); *United States v. Winfield,* 960 F.2d 970, 974 (11th Cir. 1992). The Sixth Amendment does not even require appellate advocates to raise every non-frivolous issue. *Heath,* 941 F.2d at 1131. Instead, effective advocates "winnow out" weaker arguments even though the weaker arguments may be meritorious. *Id.* Thus, even though an issue not appealed might have been successful, the appellate advocacy has to be judged in its entirety. *Id.*

The proof that appellate counsel pursued what he effectively and professionally had winnowed out as Petitioner's best chance of obtaining a reversal and/or retrial was that, on the Sixth Amendment right to counsel claim raised in Ground One, counsel succeeded in persuading a Circuit Court Panel to vacate Garey's conviction. *United States v. Garey,* 483 F.3d 1159 (11th Cir. 2007).

It does not diminish the effectiveness of counsel's decision, that upon Government motion for *en banc* hearing, the Panel's decision was reversed and Petitioner's conviction was affirmed. *See United States v. Garey,* 540 F.3d 1253 (11th Cir. 2008). Petitioner's claim **Three l** is without merit.

Petitioner Garey's **m** claim that his appellate counsel made no effort to contact him to discuss any issues prior to filing the initial brief also falls within the discretion of counsel to pick his best shot as provided by *Jones, Winfield,* and *Heath* above. Moreover, Petitioner's claim is conclusory as to whether counsel "made no effort" to contact him. At any rate, this claim fails to present a cognizable issue under § 2255(a). Likewise, Petitioner's **n** and **o** claims that either trial or appellate counsel failed to raise one or more of the Fourth Amendment claims presented in "**Ground One,**" or the Fifth Amendment claims presented in "**Ground Two**" of this Motion prior to trial or on direct appeal, are resolved by the same standard as the above conclusion as to the discretion of counsel to select the most viable issues to raise in his professional judgment. Moreover, Petitioner cannot show that he was prejudiced and that his case would have resulted differently had counsel acted differently.

He fails to show ineffective assistance of counsel or error in any of these claims.

Petitioner's claim of ineffective assistance of counsel, both trial and appellate, has been resolved adversely to Petitioner heretofore in this Report and Recommendation and need not be revisited here.   Petitioner does not even suggest what appellate counsel's conflict of interest might have been, which certainly does not address what effect it may have had on the outcome of his case.

Petitioner's **q, s,  t, y,** and **z** claims that the court appointed him attorneys that he could not call collect, that counsel Mason once hung up on him, and that Mason asserted that Garey had screamed and cursed at him over the phone for whatever reason, that appellate counsel did not give him reasonable opportunity to read expressly requested transcript testimony before filing his initial brief, and that appellate counsel refused to consult with Garey prior to filing the en banc brief, first of all, beg their questions, are conclusory, and do not take into account that an appellant's initial brief may be amended for meritorious cause, which has not been made to appear.  Most of all, however, these claims are frivolous and do not meet the criteria of cognizable claims under § 2255(a).

Petitioner's claim in Ground Three **x**, asserting that appointed pretrial counsel failed to investigate or research Eleventh Circuit authority showing that more than one cell phone can have and operate with the same ESN/MIN combination, does not demonstrate ineffective assistance of counsel, inasmuch as there was expert testimony in the trial directly contradicting this proposition (Trial Tr. Vol. V, 148, et seq.,  Dec. 14, 2004), and the jury had the opportunity to give credence to either testimony given on direct or rebuttal testimony for the defense.  There was no testimony given in contradiction of the expert testimony, through no fault of pretrial Counsel Huggins, as Petitioner had assumed pro se representation of himself at that time.  *See McKaskle v. Wiggins,* 465 U.S. 168, 177 n.8, 104 S. Ct. 944 (1984) ("[A] defendant who exercises his right to appear *pro se* cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance

of counsel." (quotations omitted)).    The *McKaskle* Court also held that, ineffective assistance of

standby counsel cannot be brought by *pro se* defendants.    *See id.* at 183, 104 S. Ct. 944.  This

ground raises no ineffective assistance of counsel claim, nor any claim cognizable under § 2255 (a).

Finally, in his Ground Three **w** claim, Petitioner Garey asserts that:

> the court security officer locked the courtroom doors without
> authorization from the court during jury selection on the first day of
> trial and refused entry to a newspaper reporter by informing the
> reporter that it was the court's policy not to permit the public during
> jury selection to come in the courtroom.

Petitioner attaches to his Motion a partial trial transcript that brought this incident to attention

as follows:

> THE COURT:  Let me just put one thing on the record before we get
> the jury down here.
>     It has come to the Court's attention that yesterday, late
> yesterday afternoon, during jury selection, a newspaper reporter was
> denied access to the courtroom and was informed by a Court Security
> Officer that it was this court's policy not to permit the public, I guess,
> during jury selection, to come in the courtroom.
>     I want to make the record clear, that is not this court's policy.
> The Court understands that this a public courtroom.  And I just want
> to make that clear so that if someone reads that article and thinks that
> gives them some basis for an appeal, by not conducting a public trial,
> I think the record – and I don't think that would give you a basis for
> appeal.  But I just want the record to be clear that the policy of this
> Court is that we conduct open trials, including jury selection, and the
> Court Security Officer simply passed along erroneous information.
>     It is my understanding that it was only one person that would
> have been denied access; that nobody else, no other member of the
> public, was denied access, because I don't think any other member of
> the public had any interest in attending jury selection.  It just so
> happened that the one person that was denied access happened to
> write it in their newspaper, and that's how the Court became aware
> of it. ... All security officers are being informed at this moment about
> their erroneous interpretation of the Court's policy.

(Trial Tr. Vol I, 199, 200, December. 7, 2004).   The facts observed by the court are not in dispute,

neither is the fact that no objection was lodged, nor any issue raised, in regard to a violation of the

defendant's Sixth Amendment right to a public trial until Petitioner's § 2255 Motion was filed.

The Sixth Amendment to the United States Constitution states (in part): "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ... ."   The case-law development regarding a defendant's right to a public trial has been concerned with varying degrees of closure.  "We have relatively little precedent on the right to a public trial generally, and have not specifically addressed the question of how to analyze the total clearing of a courtroom during a portion of a criminal trial."  *Judd v. Haley,* 250 F.3d 1308, 1315 (11th Cir. 2001).  The most definitive statement that the United States Supreme Court has issued on the scope of a defendant's right to a public trial came in the case of *Waller v. Georgia,* 467 U.S. 39, 104 S. Ct. 2210 (1984). In *Waller,* the Court considered, on *certiorari,* whether the closure of the courtroom during an extended hearing on a motion to suppress evidence violated the defendants' Sixth Amendment right to a public trial.  The Court stated:

> This Court has not recently considered the extent of the accused's right under the Sixth Amendment to insist upon a public trial, and has never considered the extent to which that right extends beyond the actual proof at trial.  We are not, however, without relevant precedents.

*Id.* at 44, 104 S. Ct. at 2214.  The Court observed that the press and public had been found in several cases to have a qualified First Amendment right to attend a criminal trial, citing *Globe Newspaper Co. v. Superior Court for Norfolk County,* 475 U.S. 596, 102 S. Ct. 2613 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S. Ct. 1814 (1980); and *Press Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S. Ct. 819 (1984) ("We also have extended that right not only to the trial as such but also to the voir dire proceeding in which the jury is selected."). *Id.* at 44-45, 104 S. Ct. at 2214.   The *Waller* Court added:

> [T]he analysis in these cases has proceeded largely under the First

21

> Amendment.  Nevertheless, there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public. ... "[o]ur cases have uniformly recognized that public-trial guarantee as one created for the benefit of the defendant."  *Gannett Co. v. Depasquale,* 443 U.S. 368, 380, 99 S. Ct. 2898, 2905 (1979).

*Id.* at 46, 104 S. Ct. at 2215.

The *Waller* Court determined that closure of the courtroom for the suppression hearing did violate the defendant's Sixth Amendment right to a public trial. The Court then proceeded to establish a procedure to be followed for permissible temporary closure of courtrooms in criminal trials.  The *Waller* Court further determined that before a criminal proceeding may be closed by the judge over the objection of the accused:

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Id.* at 48, 104 S. Ct. at 2216.  Most recently, the United States Supreme Court applied the *Waller* mandate to a closure of another Georgia courtroom, holding that:

> In upholding exclusion of the public at juror *voir dire* in the instant case, the Supreme Court of Georgia concluded, despite our explicit statements to the contrary, that trial courts need not consider alternatives to closure absent an opposing party's proffer of some alternatives.  While the Supreme Court of Georgia concluded this was an open question under this Court's precedents, the statement in *Waller* that "the trial court must consider alternatives to closing the proceeding" settles the point. ...  Absent consideration of alternatives to closure, the trial court could not constitutionally close the *voir dire*.

*Presley v. Georgia,* 130 S. Ct. 721, 721-24 (2010).   The thrust of none of the foregoing precedent can be applied here to the facts or the legal circumstances of  Petitioner Garey's case.  There was no party seeking closure of the courtroom; neither the trial judge nor any of the parties were aware of the unauthorized closure of the courtroom during juror *voir dire* by an unnamed Court Security

Officer; the trial court took curative action as soon as the closure was brought to his attention;  no evidence had been presented;  and no objection was made by the defendant.

In *United States v. Ivester,* 316 F.3d 955 (9th Cir. 1992), the Circuit Court observed:

> Though some courts and treatises boldly declare that the Sixth Amendment right to a public trial applies to the entire trial, *United States v. Sorrentino,* 175 F.2d 721, 722 (3rd Cir. 1949); WAYNE R. LAFAVE, HEROLD H. ISRAEL, NANCY J. KING, 5 CRIM. PROC. § 24.1(a) (2nd ed.1999) (the Sixth Amendment right to a public trial "covers the entire trial, including the impaneling of the jury and the return of the verdict"), this position has been rejected by recent decisions which demonstrate that the right to a public trial does not extend to every moment of trial.  *See, e.g., United States v. Edwards,* 303 F.3d 606, 616 (5th Cir. 2002) ("We must first determine whether *Waller* applies to" the court's decision to empanel an anonymous jury): *Peterson v. Williams,* 85 F.3d 39, 42-43 (2nd Cir. 1996) **cert. denied,** 519 U.S. 878, 117 S. Ct. 202 (1996) (unjustified closure is too trivial to violate the Sixth Amendment where closure does not undermine the values furthered by the public trial guarantee) ... Thus, we must determine whether the proceedings in question implicate the Sixth Amendment.

*Id.* at 958-59 (emphasis added).   The *Ivester* Court went on to say, "Many of our sister circuits have relied on *Peterson* to determine whether a closure implicates the accused's Sixth Amendment right to a public trial."  *Id.* at 960.   The Tenth Circuit Court of Appeals, in *United States v. Al-Smadi,* 15 F.3d 153, 154-155 (10th Cir. 1994), applied *Peterson* to hold that the brief and inadvertent closure of the courtroom did not implicate the Sixth Amendment.     The *Ivester* Court also set out the following:

> To determine whether a closure was too trivial to implicate the Sixth Amendment guarantee, we must determine whether the closure involved the values that the right to a public trial serves.   These values have been articulated in *Peterson* and *Waller* as:
>
> (1) to ensure a fair trial, (2) to remind the prosecutor and the judge of their responsibility to the accused and the importance of their functions, (3) to encourage witnesses to come forward, and (4) to discourage perjury.  *Peterson,* 85 F.3d at 43; *see also Waller,* 467 U.S. at 46-47, 104 S. Ct. 2210.

*Ivester,* 316 F.3d at 960.   Also, the Ninth Circuit Court of Appeals in *United States v. Shryock,* 342 F.3d 948, 974 (9th Cir. 2004), quoting *Al Smadi,* 15 F.3d at 155, which held, "The denial of defendant's Sixth Amendment right to a public trial requires some affirmative action by the court meant to exclude persons from the courtroom," further observed that, "some closures are too trivial to implicate the Sixth Amendment right to a public trial." (citing *Ivester* , 316 F.3d at 959-60).

So many courts have relied on *Peterson v. Williams,* 85 F.3d 39 (2nd Cir. 1996), *cert. denied,* 519 U.S. 878, 117 S. Ct. 202 (1996), that one more *Peterson* observation is in order, to wit:

> Other courts have made analogous distinctions.  They too have held that a temporary closure may, at times, not violate the Sixth Amendment.  In *Snyder v. Coiner,* 365 F.Supp. 321 (N.D.W. Va.), (1973), *aff'd,* 510 F.2d 224 (4th Cir. 1975), for example, a deputy sheriff closed the courtroom doors during summation because he had misunderstood a state trial judge's order to keep the courtroom quiet. The district court, reviewing the defendant's petition for writ of habeas corpus, found no violation because the closure was only for a "relatively small portion of the trial" and because "[neither the judge nor the parties were aware of any exclusion of the public taking place." *Id.* at 324.  On appeal the Fourth Circuit affirmed the district court's decision.  It stated: "Such condition existed for but a short time and was quickly changed by the Court, when advised of the action of the bailiff ... The incident was entirely too trivial to amount to a constitutional deprivation." *Snyder,* 510 F.3d at 230.  *See also United States v. Al-Smadi,* 15 U.S. 153, 154-55 (10th Cir. 1994) (closure was "brief and inadvertent," "unnoticed by any of the trial participants," and did not "recur[]," did not violate Sixth Amendment).

*Id.* at 42-43.  These cases are so closely analogous to the closure in Petition Garey's case that they cannot be ignored, nor can the finding that the closures were too trivial to violate the defendant's public trial right.  The closure in Garey's case was even more trivial than most of these authorities.

More recently in *Gibbons v. Savage,* 555 F.3d 112 (2nd Cir. 2009), **cert. denied**, 130 S. Ct. 61 (2009) (emphasis added), the Second Circuit Court of Appeals posited:

> Do trivial exclusions require overturning a conviction?  We recognize that the violation of a defendant's right to a public trial is not justified

by a finding that the error was harmless.  *Waller,* 467 U.S. at 49-50 & n. 9, 104 S. Ct. 2210; *Guzman v. Scully,* 80 F.3d 772, 776 (2nd Cir. 1996).  If it were, little or nothing would remain of the right because the presence or absence of public spectators rarely, if ever, will affect the result of a trial, at least in a manner that is perceptible.

The Supreme court has divided court errors in criminal trials into two categories: trial errors and structural errors.  *See Arizona v. Fulminate,* 499 U.S. 279, 307-10, 111 S. Ct. 1246 (1991).  Trial errors are those to which the harmless error analysis applies.  *Id.* at 307-08.  111 S. Ct. 1246.  By contrast, structural errors are those to which the harmless error analysis does not apply, as they are deemed to render a criminal trial fundamentally unfair.  *See Washington v. Recuenco,* 548 U.S. 212, 218-19, 126 S. Ct. 2546 (2006); *Neder v. United States,* 527 U.S. 1, 8-9, 119 S. Ct. 1827 (1999).  The errors identified by the Supreme Court as falling in the "structural" category are denial of counsel, [citation omitted], a biased trial judge, [citation omitted], racial discrimination in the selection of the grand jury, [citation omitted], the denial of the right of self-representation, [citation omitted], the denial of the right to trial by jury by giving a defective reasonable-doubt instruction, [citation omitted], and the denial of a public trial, *see Waller,* 467 U.S. at 49, 104 S. Ct. 2210.

... It does not follow, however, that every deprivation in a category considered to be "structural" constitutes a violation of the Constitution or requires reversal of a conviction, no matter how brief that deprivation or how trivial the proceedings that occurred during the period of the deprivation. ...

Similarly, in the context of a denial of the right of public trial, as defined in *Waller,* it does not follow that every temporary instance of unjustified exclusion of the public – no matter how brief or trivial, and no matter how inconsequential the proceedings that occurred during an unjustified closure  – would require that a conviction be overturned. ...  The contention that such a brief and trivial mistake could require voiding a criminal trial of many months duration seems to us unimaginable.  Whether the explanation would be that so trivial an exclusion did not constitute a violation of the Sixth Amendment, or that there was a violation but too trivial to justify voiding the trial, we do not know.   But we believe that, regardless of which explanation would be given, the result would be to allow the conviction to stand.  We must speculate because the Supreme Court has never ruled on such a question.

In *Peterson v. Williams,* 85 F.3d 39 (2nd Cir. 1996), our court declined to vacate a conviction in spite of an unjustifiable, temporary

courtroom closure, notwithstanding that it occurred during an important part of the proceedings, where the closure occurred without the awareness of the judge as the result of an administrative malfunction. *Id.* at 42. ... Recognizing that the harmless error standard did not apply, we nonetheless ruled that the closure was too trivial to require that the conviction be vacated.  *Id.* at 41- 44.

In evaluating whether a closure is trivial, we look to the values the Supreme Court explained were furthered by the public trial guarantee, focusing on (1) ensuring a fair trial, (2) reminding the prosecution and judge of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury.  *Peterson,* 85 F.3d at 43 (citing *Waller,* 467 U.S. at 46-47, 104 S. Ct. 2210).  Essentially, our analysis turns on whether the conduct at issue "subverts the values the drafters of the Sixth Amendment sought to protect." *Smith v. Hollins,* 448 F.3d 533, 540 (2nd Cir. 2006). ...

Reviewing the public trial values in relation to this case, we conclude that the closure was too trivial to justify vacating Gibbon's conviction.  The third and fourth values derived from *Waller* and articulated in *Peterson* are not implicated by voir dire because no witnesses testified.  These values, therefore do not weigh either in favor or against a triviality finding.  As to the first and second values, in the particular circumstances of this case, limiting presence at the voir dire proceedings to only the attorneys, judge, defendant, and prospective jurors for one afternoon did not subvert these values. ...

Although the closure was not justified, we conclude upon examination of all the details of what occurred, that event was too trivial to warrant the remedy of nullifying an otherwise properly conducted state court criminal trial.

*Id.* at 119-121.  Petitioner Garey's case cannot be distinguished from *Gibbons,* which together with *Peterson,* and the United States Supreme Court's denial of *certiorari* to both, have carved out a *triviality rule* to structural error closure of public trials.   The temporary closure of the courtroom during juror *voir dire,* unknown to the trial judge, the attorneys, or the defendant, which was corrected by the trial judge upon first detection, is too trivial to require that Garey's conviction be vacated.  This claim should be denied on that basis.

Moreover, Garey's case is distinguished from the Supreme Court's *Presley v. Georgia,* 130 S. Ct. 721 (2010).   No party was seeking closure. The trial judge was unaware of the administrative closure during juror *voir dire*, and corrected it as soon as it came to his attention.   He had no opportunity to employ the *Waller* procedure to determine whether or not exigent circumstances existed that might warrant closure, nor opportunity to articulate findings, one way or the other.   Note must be taken that in *Presley,* the trial court *ordered* the exclusion of the public from the courtroom during the juror *voir dire,* over  defense counsel's *objection*,   and, after Presley was convicted, defense counsel moved for a new trial based on the exclusion of the public from the juror *voir dire. Id.* at 722.   Presley raised the issue  on direct appeal before the Georgia Supreme Court, and, upon denial,  raised it  again on *certiorari* before the United States Supreme Court, with the above-stated results.   Garey did not objection to the temporary closure when it was detected, nor did he raise the issue on direct appeal.[2]   Garey raises his claim of a Sixth Amendment violation of his public trial right for the first time in his § 2255 Motion.   Upon all of the foregoing authority, Petitioner Garey's Ground Three, in all of its parts, should be denied.

In **Ground Four** of his Motion to Vacate pursuant to § 2255, Petitioner Garey alleges:

> The Conviction was obtained in violation of Garey's 1st and 9th Amendment Right to freedom of the press, to peaceably assemble, and to petition the Government for a redress of grievances or other rights retained by the people.

Petitioner Garey follows this allegation with vague and conclusory claims or statements, proffered with little argument, citation of authority, or reference to any record.   The Government

---

[2]The extensive foregoing examination of the triviality of a brief closure during juror *voir dire,* fails to lead to the conclusion that no other reasonable attorney would have conducted Garey's appeal as his appellate counsel did, therefor negating any ineffective assistance of counsel claim for inability to show prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984).

alleges, that having failed to raise any of these claims in either of his direct appeals, Petitioner Garey

has procedurally defaulted these claims, with the exception of the claims **c** and **b**, which he did raise

on direct appeal, but which were decided adversely to him.

In *Lynn v. United States,* 365 F.3d 1234, 1235 (11th Cir. 2004), our Court of Appeals held

that under the procedural default rule, a defendant generally must advance an available challenge to

a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that

claim in a § 2255 proceeding.  *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones*

*v. United States,* 153 F.3d 1305, 1307 (11th Cir. 1998).   This rule generally applies to all claims,

including constitutional claims.  *See Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994)

("Where the petitioner  – whether a state or federal prisoner – failed properly to raise his claim on

direct review, the writ is available only if the petitioner establishes cause for the waiver and shows

actual prejudice resulting from the alleged violation.").   A defendant can avoid a procedural bar only

by showing cause for not raising the claim of error on direct appeal *and* actual prejudice from the

alleged error.  *Brousley v. United States,* 523 U.S. 614, 622, 118 S. Ct. 1604, 161 (1998); *Mills v.*

*United States,* 36 F.3d 1052, 1055 (11ᵗʰ Cir. 1994).

Petitioner's only attempt at showing cause to explaining why he did not raise this Fourth

Amendment issue on direct appeal appears on page five (5) of his § 2255 petition form (R 286) at

Ground One (b)(2) where he states:

> Court-Appointed Appellate Counsel refused to raise any of these
> issues on appeal and ignored movant's repeated requests or demands
> for him to raise them.

This assertion may explain the cause for the procedural default on this particular issue but

it does not address the actual prejudice prong required to avoid a procedural bar per *Brousley,* 523

U.S. at 622, 118 S. Ct. at 161 and *Mills,* 36 F.3d at 1055, *supra.*  Thus, Petitioner's Ground Four

claim becomes a Sixth Amendment issue of effective assistance of counsel.

If a claim of ineffective assistance of counsel is predicated on counsel's failure to litigate

Petitioner's Ground Four claims, excepting claims **c** and **d,** Petitioner must establish that these

claims were meritorious and that a reasonable probability exists that the appellate court's decision

would have been different  absent the evidence allegedly subject to trial counsel's Motion to

Suppress. *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S. Ct. 2574 (1986).  From the following

analysis, it does not appear that Petitioner can do that.

Petitioner Garey alleges:

The Conviction was obtained in violation of Garey's 1st and 9th Amendment Right to
freedom of the press, to peaceably assemble, and to petition the Government for a
redress of grievances or other rights retained by the people, when:

> **a.**  the court security officer locked the courtroom doors without
> authorization from the court during jury selection on the first day of
> Garey's trial and refused entry to a newspaper reporter by informing
> the reporter that it was the court's policy not to permit the public
> during jury selection to come into the courtroom;

> **b.**  the court held its hearing on Garey's Motion to Disqualify counsel
> in Judge Land's robing room prior to the start of jury selection instead
> of in open court thereby denying both the newspaper reporters and the
> press an opportunity to observe the fairness of the proceedings.

By his claims **a** and **b**, Garey attempts to urge for his benefit the press's First Amendment

right, which inures only to the press and not to criminal defendants in habeas corpus.  Petitioner's

public trial issue was resolved in Petitioner's Ground Three above.  A full discussion of that issue

revealed that the United States Supreme Court in *Waller v. Georgia,* 467 U.S. 39, 104 S. Ct. 2210

(1984), stated:

[T]he analysis in these cases has proceeded largely under the First

29

> Amendment.  Nevertheless, there can be little doubt that **the explicit Sixth Amendment right of the accused** is no less protective of a public trial than the implicit First Amendment right of the press and public. ...  "[O]ur cases have uniformly recognized that public-trial guarantee as one created for the benefit of the defendant."  *Gannett Co. v. Depasquale,* 443 U.S. 368, 380, 99 S. Ct. 2898, 2905 (1979).

*Id.* at 46, 104 S. Ct. at 2215 (emphasis added).   Petitioner Garey's Sixth Amendment right to a public trial does not include a First Amendment right to have the press in attendance.  The press is not a party to this action and Petitioner Garey's public trial right as a criminal defendant, resolved in Ground Three above, does not warrant further analysis of the First Amendment right of the freedom of the press.   The closure raising the issue of Petitioner's public trial right was found to be trivial in Petitioner's Ground Three.   His inappropriate First Amendment claim here to the constitutional rights of the press is found to be frivolous.

Petitioner Garey proffers the following claims that:

> **c.**  the Government moved to increase Garey's offense level by two levels under U.S.S.G. § 3C1.1 ... ; [and]

> **d.**  the Government moved to increase Garey's offense level by two levels under U.S.S.G. § 3C1.1 ... ; [and]

> **h.**  the Government moved to punish Garey for filing a pretrial action seeking habeas corpus relief ... .

The allegations concerning Petitioner's sentence have already been litigated and resolved adversely to Petitioner Garey on direct appeal.  *See United States v. Garey,* 546 F.3d 1359 (11th Cir. 2008), *cert. denied,* 129 S. Ct. 2432 (2009).   Moreover, it must be noted that the district court did not follow the Government's sentencing recommendations.   The Eleventh Circuit found:

> There is no indication that the district court failed to consider [the factors set forth in 19 U.S.C. § 3553(a)] in determining what sentence to impose.  ... [T]he district court went below the advisory Guidelines range and, in essence, gave him the equivalent of a 6-level downward

> departure for his offense level, ... and a 3-category departure in his
> criminal history category, ... and sentenced him at the low end of the
> resulting Guidelines. *United States v. Garey,* 383 F.Supp. 2d 1374,
> 1378-80 (11th Cir. 2005).

*Id.* at 1364.   Petitioner's sentencing claims were resolved on direct appeal and will not be reviewed

here.   The Eleventh Circuit Court of Appeals has held:

> The district court is not required to reconsider claims of error that
> were raised and disposed of on direct appeal. *United States v. Rowa,*
> 663 F.2d 1034, 1035 (11th Cir. 1981).   "[O]nce a matter has been
> decided adversely to a defendant on direct appeal it cannot be re-
> litigated in a collateral attack under section 2255." *United States v*
> *Natelli,* 553 F.2d 5, 7 (2nd Cir. 1997).

 *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000).   Petitioner's sentencing claims are

not cognizable in this § 2255 proceeding.

Petitioner Garey proffers complaints regarding the conditions of his arrest and detention, as

follows:

> **e.** the FBI told jailers not to allow Garey to make any telephone calls:
>
> **f.** the court issued its order directing the U.S. Marshals not to allow
> Garey any phone calls to anyone other than court-appointed counsel,
> prohibiting him from contacting any immediate family members and
> other attorneys by phone or legal aid programs for assistance or
> advice;
>
> **i.** Garey was subjected to substandard conditions of confinement for
> exercising his rights; [and]
>
> **o.** Government stripped Garey naked and subjected him to other
> abuses for refusing to cooperate with FBI interrogation; for refusing
> to answer incriminating jail booking questions and for refusing to
> sign jail booking forms.

It cannot be overlooked that Garey was indicted for making numerous phone calls threatening

the use of bombs and weapons of mass destruction.   Further, the court's order (R 19, 60, 61 ),

referenced in Petitioner Garey's claim **Four f** above, actually provided the following:

> Defendant shall not be permitted to make outgoing telephone calls while ... in custody ... except to his attorney of record. Telephone calls to his attorney of record will be permitted provided his custodian physically makes the call on behalf of the defendant to his counsel, insuring that his counsel is, in fact, on the receiving end of the call. HOWEVER, TELEPHONE CALLS TO HIS ATTORNEY SHALL NOT BE MONITORED ONCE A CONNECTION HAS BEEN ESTABLISHED.

Petitioner's foregoing claims, all being complaints of conditions of arrest and pretrial detention, are not cognizable issues under 28 U.S.C. § 2255:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

*See Runge v. United States,* 427 F.2d 122 (10th Cir. 1970); *Williams v. United States,* 344 F.2d 264 (8th Cir. 1965); *Ragavage v. United States,* 272 F.2d 156 (5th Cir. 1960);[3] *Houser v. United States,* 508 F.2d 509, 514-516 (8th Cir. 1974).

Petitioner Garey alleges at his paragraph *Four g* that the "Government refused to provide him sufficient postage to mail letters to court-appointed counsel, courts, other attorneys and family members." Despite the AUSA's Response (R 309 at 43) that, "There was nothing improper in limiting the Defendant's access to the mail, and such did not prejudice the Defendant's case," by this claim, Petitioner Garey has asserted that he has been denied his First Amendment right to access to the courts. However, his claim is not supported by the record. In the face of a record with a Docket

---

[3]The Eleventh Circuit, sitting en banc in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

of more than 60 pages and 356 pleading entries, a very large portion of which were filed by Petitioner Garey, it is ludicrous to suggest that Garey has been denied access to the courts. Moreover, the transcript of his sentencing hearing contains a discussion between the court, counsel, and Garey about a letter Garey wrote Judge Owens before he recused himself from the case, which letter contained razor blades. (Sentencing Tr., 15, 68, Aug. 10, 2005).   Did he need more postage? Moreover, Petitioner's Supporting Facts For Grounds One, Two, Three & Four (R 286), following his § 2255 Motion, contains numerous references made by Petitioner Garey himself regarding his having sent letters and pleadings to various and sundry court officials, for example, at ¶ 66, "King introduced letters that Garey had written to Judge Owens... ."; at ¶ 68, "Prior to the sentencing date, Garey sent Mr. Mason several letters and faxes ... . "; at ¶ 74, "On January 19, 2006, ... Garey filed a Complaint against William J. Mason ... directly to the 11th Circuit ... ."; at ¶ 81, "Gary submitted multiple pro se motions and other pleadings ..."; at ¶ 82, "Garey wrote Mr. Mason a very distasteful and bitter letter ... , In his letter dated August 28, 2008, Garey gave Mr. Mason and eye full of hateful vulgar words."; at ¶ 84, "In September of 2008, Garey wrote a letter to the 11th Circuit ... ."; at ¶ 85, "The Supreme Court granted Garey's pro se application for an extension of time within which to file a petition for writ of certiorari on October 30, 2008."  While Petitioner's First and Sixth Amendment rights to access to the courts and counsel are acknowledged, the record and his bare allegation that the Government refused him postage is refuted by the volume of mail and pleadings he sent to the court and other persons.  This claim is unsupported and without merit.

Petitioner Garey's claims **Four k, m,** and **n,** [**j** and **l** omitted] are not issues cognizable in a Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.

**k.** Government refused to allow Garey to be present during pretrial hearings or conferences relating to the question of his competency and other issues of fact that he had the right to attend;

**m.**  Court refused to allow Garey to have his mother present during sentencing hearing;

**n.**  Court-appointed counsel refused to assist Garey with securing his Mother's presence at sentencing.

As to Garey's presence at conferences relating to his competency, he was represented by counsel, which he had not yet moved to have discharged, and as the defendant whose competency was in question, by definition he had no right to be present for any such discussion.

The Sentencing Transcript reveals that Garey simply stated, during a lengthy recitation of his childhood abuses by his father, that he wished his mother could be there, that she could explain it better.  No request was made on the court to have her present, and a reading of that part of the transcript shows the subject matter was totally irrelevant to any issue in the sentencing hearing, as the court repeatedly noted.  (*See* Sentencing Tr. at 76-78, 86, 87).  Petitioner Garey mentioned that his mother and sister might have testified in his favor on the question of avoiding a life sentence as urged by the Government, but, as noted above, the court did not sentence Garey to a life sentence, but went considerably below the recommendation and the advisory sentencing guidelines in its sentence.  Petitioner Garey can show no prejudice, even if he had a right to be present at competency conferences, or to have his mother or sister present at his sentencing.  Nowhere in the record does it reflect that the court's subpoena power was denied to Petitioner Garey.   These are not cognizable in § 2255 and are otherwise without merit.

Petitioner Garey alleges as his **Ground Five** that his Conviction was:

(1) obtained by a court whose statutory jurisdiction over the person of the offense was created under a federal statute passed in the absence of a quorum on May 12, 1947, to wit., ***H.R. 3190,*** and therefore unconstitutional; (2) that the President of the United States signed the Bill into law while

both Houses of Congress were not sitting in regular or extraordinary session;[4] (3) the district court issued warrants, orders sentencing and judgment under 18 U.S.C. § 3231, 62 Stat. 826, ch. 645, § 1(1948), which was not passed as a federal statute for lack of a quorum of Congress and therefore unconstitutional; (4) that Garey was arrested and held under 18 U.S.C. § 4086, 62 Stat. 851, ch. 645, § 1 (1948), which was not passed as a federal statute or signed for lack of a quorum; (5) the Department of Justice classified Garey according to the nature of the offenses committed for the service of the sentence under the system of discipline, care, and treatment prescribed in 18 U.S.C. § 4081 (62 Stat. 850, June 25, 1948, ch. 645, § 1), which was not passed or signed in the presence of a quorum; and (6) "The indictment failed to name or identify any person that any such alleged threats to use certain weapons of mass destruction were made against, but only identified certain business properties or place(s) of business." (R 286 at18).

The issues raised here have been raised in futility many times heretofore by convicted defendants resorting to frivolous and contorted theories of law.  Most recently, in *Stewart v. United States,* Nos. 1:07-kCV-3045-TWT, 1:08-CV-1005-TWT, 2009 WL 909547, at *3 (N.D. Ga. Apr. 2, 2009), the court addressed these issues and ruled:

> Movant contends that the District Court's Order committing Movant into the custody of the Bureau of Prisons relied upon the unconstitutionally enacted Public Law 80-772, Section 3231, which was issued ultra vires, and is unconstitutional and void because H.R. 3190 never passed both houses of Congress in the manner required by Article I, Section 7, Clause 2, and consequently, Movant's imprisonment is unlawful because the District Court lacked subject-matter [and personal] jurisdiction.

This is Petitioner Garey's Grount Five argument in the most part.  The *Stewart* Court  went

---

[4]Within the ten day time limit set forth in the Constitution for the President to act on a bill, it is irrelevant to the President's approval that Congress has adjourned, and it "makes no difference whether the Congress has adjourned *sine die* or to a day named."  *Edwards v. U.S.,* 286 United States 482 (1932).

on to observe:

> "The 1948 amendment to § 3231 passed both houses of Congress and was signed into law by President Truman on June 245, 1948. Therefore, the amendments and statutes relied upon for jurisdiction ... were properly enacted and binding." *United States v. Risque,* 426 F.Supp.2d 310, 311 (E.D. Pa. 2006); *United States v. Siegelman,* Case No. 2: 05-CR-119-MEF-CSC, 2007 WL 1284276, at *1 (M.D.Ala. Apr. 30, 2007) ("even the briefest of forays into the electronic databases available for legal research yields a long list of judicial opinions that have considered and rejected the []argument" that 18 U.S.C. § 3231 "was not properly enacted"); *Choas v. USA Mining, Inc.,* Case No. 1:04-CV-1, 1:04-CV-138, 2007 WL 208530 at *16 (E.D. Tenn. Jan. 24, 2007)("Every court that has considered this argument [concerning the enactment of § 3231] has ruled against the defendant."). In light of previous decisions finding that tss 3231 was properly enacted and Movant's failure to offer any authority directly supporting [his contentions], this Court concludes that this ground for relief does not offer a basis for granting Movant's motion to vacate, set aside, or correct sentence.

*See also Mayfield v. U.S. Attorney Gen.,* No. 2:07-CV 258, 2008 WL 2130234 (E.D. Tex. May 16, 2008); *United States v. Chillemi,* No. CR-03-0917-PHX–PGR, 2007 WL 2995726 (D. Ariz. Oct. 12, 2007); and *United States v. Davis,* No. 1:07-CR-13, 2007 WL 2317246 (E.D. Tex. Aug. 8, 2007), all of which deal with the issues raised, and all of which held the argument was frivolous and without merit.

Petitioner Garey's contention that, "The indictment failed to name or identify any person that any such alleged threats to use certain weapons of mass destruction were made against, but only identified certain business properties or place(s) of business," is frivolous. The bomb threats counts 12-16 contained in the indictment were charged under 18 U.S.C. § 2332a(a) which provides in part:

> A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction —
> (2) against any person ***or property*** within the United States , ...

36

(emphasis added). The indictment tracked the language of the statute quoted in relevant part, contained the necessary elements of the offense, and was sufficient upon its face to give notice to Petitioner Garey as to the charges against him. *See* Fed.R.Crim.P. 7(c)(1); *United States v. Poirier,* 312 F.3d 1024, 1029 (11th Cir. 2003)("when analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations"). This and all of Petitioner's claims in his Ground Five are meritless.

Petitioner Garey states as his **Ground Six,** that:

> Conviction was obtained in violation of the Jenks Act, 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 16(a)(2), when the Government withheld cell site data score sheets showing that both calls placed from Nextel Number 478-256-9704 to 911 at 12:51 p.m. and 12:52 p.m. on 9-1-2003 were placed from the same ESN which was needed to show that the Government knew that Russel Yarbrough had placed both of those calls, but was not charged with making the bomb threats to Wal-Mart which the Movant was accused of and later punished for during sentencing. Yarbrough's Cell site ESN data would have allowed petitioner to cast doubt on Greenberg's one ESN per phone theory; that government also withheld psychiatric records showing that its key witness La Kecia Shannon had been previously committed to a mental hospital for violent rages and threats.

This claim was not raised at trial nor on direct appeal and is procedurally defaulted. Furthermore, Petitioner does not argue this claim, either in his Supporting Facts For Grounds One, Two, Three, Four and Five, attached to his § 2255 Motion (R 286 at 22-25, R 286-2 at 1-25), or his Memorandum of Law in Support of Movant's § 2255 Motion (R 314 at 1-38). Petitioner Garey cites no authority for any alleged violation of rights stated here. Petitioner has abandoned this claim. *Bayro v. Reno,* 142 F.3d 1377 (11th Cir. 1998). When a petitioner merely states a grievance without legal argument, the claim is waived as superficial. *Walker v. Dugger,* 860 F.2d 1010, 1011 (11th Cir.

1988), *cert. denied,* 446 U.S. 1029 (1989); *United States v. Jones,* 614 F.2d 80 (5th Cir. 1980), *cert. denied,* 446 U.S. 945 (1980).   Petitioner's Ground Six should, therefore, be summarily denied.

Likewise, Petitioner Garey's Motion For Partial Summary Judgment (R 305) which asserts:

> Movant is entitled to summary judgment because, as more fully shown in Movant's Amended Motion Under 28 U.S.C. § 2255 ... (R 286) ... together with facts and attachments to this Motion show that there are no genuine issue[s] of material facts in dispute with respect to the issues raised in ***Ground One*** ..., ***Ground Two*** ..., ***Ground Three*** ..., ***Ground Four*** ..., of Movant's Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence as revealed therein.[5]

The foregoing findings of procedural bar, lack of merit, and waiver of Petitioner's § 2255 claims, establish the existence of genuine issues of material fact as to the stated grounds of Petitioner's Motion for Partial Summary Judgment (R 305), and the same should, therefore, be denied.

Petitioner Garey's Motions for the District Court to take judicial notice (1) of FBOP special mail procedures (R 290),  (2) of the 1996 version of 18 U.S.C. § 2332a(a)(2) for comparison purposes (R 306), (3) of the fact that Government has prosecuted people for cloning ESN/MIN Chip Combination (R 311), (4) of 28 C.F.R. § § 60.2 & 60.3 (R-341), (5) of *Anderson v. Dunn,* 19 U.S. 204, 216, 6 Wheat. 204, 216, 5 L. Ed. 242 (1821) (R 342), and (6) of *Presley v. Georgia,* 130 S. Ct. 721 (2010), were tacitly granted during the examination of Petitioner's Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (R 286).  Petitioner's Motion for Judge Land to Partially Recuse Himself (R 291) is denied as frivolous.  Petitioner's Motion to expand the record and for the court to take judicial notice (R 295) is denied.  Petitioner's Motion for Discovery and Appointment of Attorney (R 296) is denied.  Petitioner's Motion for the Clerk of Court to enter all papers filed in Movant's 2255 action (R 297) is granted.  Petitioner's Motion to Strike Respondent's

---

[5]Movant makes no reference to his enumerated Grounds Five and Six.

Motion for Extension of Time as scandalous (R 303) is denied.  Petitioner's Motion for Admissions (R 307) is denied.  Petitioner's Motion to unseal transcript of 11/12/04 hearing and reveal identity of FBI agent (R 310) is denied.  Petitioner's Motion to strike Government's Response to Defendant's Motion To Vacate under 28 U.S.C. § 2255 as scandalous (R 312) is denied.  Petitioner's Motion for sanctions due to fraud upon the court (R 316) is denied.  Petitioner's Motion for Evidentiary Hearing (R 318) is denied.  Petitioner's Motion for return of property (R 320) is denied.  Petitioner's Motion for Preliminary Injunction (R 321) is denied.  Petitioner's Motion for an Order directing Government, DOJ, FBOP, to cause mail bearing the legend United States Courts, Office of the Clerk, or its equivalent to be treated as legal mail (R 347) is denied.  Petitioner's Motion for order directing Government to allow Movant out of his cell (R 354) is denied.  Petitioner's Motion for order directing BOP and Government to return all papers seized on 3/10/10 (R 356) is denied.

WHEREFORE, having found Petitioner Garey's claims in his Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 procedurally barred, waived, and/or without merit, IT IS RECOMMENDED that his petition be DENIED.  Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner and/or the Government may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN FOURTEEN (14) DAYS after being served with a copy hereof.

SO RECOMMENDED this 29th day of March 2010.


S/G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

39